FILED
2019 Aug-06 PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| AMANDA ADAMS DALTON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:18-cv-00397-JEO |
| TARGET CORPORATION, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Plaintiff Amanda Adams Dalton brings this premises liability action against Defendant Target Corporation to recover for injuries she suffered when she slipped on a puddle of liquid on the floor in a Target store and fell. (Doc. 1-1 at 4-6).[1] The case was originally filed in the Circuit Court of Jefferson County and removed to this court by Defendant. (Doc. 1). Pending before the court[2] is Target's motion for summary judgment, (doc. 26), along with its brief and evidence in support of the motion, (docs. 27-28). Plaintiff filed a brief in opposition to summary judgment, (doc. 31), and Defendant filed a brief in reply, (doc. 33). The motion is now ripe for decision and due to be granted in full for the reasons that follow.

---

[1] All evidentiary citations refer to the document and page number provided by CM/ECF, the court's electronic document filing system, except for citations to depositions, which refer to the page number provided on the deposition transcript, and declarations, which refer to the paragraph number in the declaration.

[2] The parties have consented to an exercise of plenary jurisdiction by a magistrate judge, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 7).

I.  **STATEMENT OF FACTS**

   A. **The Incident**

On February 11, 2016, Plaintiff entered the Target store in Homewood, Alabama, with her mother. (Doc. 28-1 ("Dalton Dep.") at 15). She came up the escalator at the front of the store and turned to the right to walk toward the restroom which was located at the other end of the front of the store, past the checkout lanes. (*Id*. at 15-17). When she was in front of checkout lane twelve,[3] Plaintiff stepped in a puddle of white liquid, slipped, and fell to the floor. (*Id*. at 17-18, 21). The incident report notes the time of the fall as 3:50 p.m. (Doc. 28-2 at 6).

Plaintiff did not see the puddle before she stepped in it and fell. (Dalton Dep. at 18). After she fell, she noticed a wet spot on her pants and on the toe of her shoe. (*Id*. at 21). She looked around and noticed an approximately six-inch wide puddle that appeared to be a dairy product, such as milk or cream. (*Id*. at 21-22). In describing the small puddle, Plaintiff stated:

> I could see where I had slid through it. I could see a ring around it, you know when milk or cream, a dairy product starts to dry it starts to kind of get a clear hard ring around it, it had that ring around it and little drops leading off too – later we followed the drops all the way to Starbucks.

---

[3] Lane twelve is one of the closest checkout lanes to the escalator. (Dalton Dep. at 17-18). There are a total of fourteen check-out lanes.

(*Id*. at 22).  With regard to the droplets, Plaintiff testified that "[t]hey were dirty" and "had been tracked through."  (*Id*. at 24).

A Target employee immediately came to help Plaintiff when she fell.  (*Id*. at 19-20).  Additionally, someone came and cleaned up the liquid on the floor.  (*Id*. at 26-27).  Once she regained her bearings, Plaintiff stood and went to the restroom and "knew immediately something was not right with [her] left leg and left hip."  (*Id*. at 24, 35-36).  Before leaving the store, she completed an incident report.  (*Id*. at 25).

   **B. Target Policies and Procedures**

Target employees are responsible for identifying and cleaning up spills.  (Doc. 28-3 ("Wallace Dep.") at 15-17, 21-22; Doc. 28-2 ("Warren Decl.") ¶10). As they perform their assigned tasks, employees are required to look out for spills or other substances on the floor that could pose a hazard to customers.  (Wallace Dep. at 29-30; Warren Decl. ¶9).  Cashiers are trained to observe their areas for spills and immediately clean spills when detected.  (Wallace Dep. at 16, 29-30, 40-41).  Target Team Leaders and Executive Team Leaders also continually walk the sales floor to ensure that the store is safe and secure.  (*Id*. at 16-17).  Target staffs its stores to ensure that there are sufficient employees to ensure guest safety.  (*Id*. at 44-45).  Even during busy times, Target stores are staffed so that any spills or

3

hazards should not remain unnoticed for longer than five minutes. (*Id*. at 22-23, 44-45).

In a given day, not including the Christmas holidays, there are approximately 60 employees working in the building, in all departments. (*Id*. at 29). The front portion of the store is managed by the guest service team leader. (*Id*. at 25). The guest service team leaders are responsible for helping customers, managing employees going on break, helping cashiers with overrides or changes, and the like. (*Id*. at 25-27, 37). Additionally, they are required to "constantly" "go up and down the lanes and . . . make sure guests get to the place they're supposed to be at by they also, you know, are there is observe what's going on in the front end." (*Id*. at 25-26, 37). Additionally, "executive" employees are supposed "to be in every corner of the store every 15 minutes" and "spend 15 minutes in each area" of the store. (*Id*. at 18).

When a Target employee sees a spill or other hazard, the employee is trained and required to immediately stop what he or she is doing, remain by the spill to warn customers, and radio another employee for assistance with cleaning up the spill. (*Id*. at 12-23; Warren Decl. ¶ 11). Another Target employee then brings the appropriate cleaning supplies to the area and the area is cleaned. (Warren Decl. ¶11). Target employees are trained to never walk away from a spill once they detect it. (Wallace Dep. at 12-23).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleading depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id*. at 323. Once the movant has met its initial burden, the non-moving party must go beyond the pleading and by his own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue suitable for trial. *See id.* at 324; *see also* Fed. R. Civ. Pro. 56(e).

Substantive law identifies which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences must be resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

## III. DISCUSSION

Under Alabama law, the elements of negligence in a premises liability case "are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Sessions v. Nonnenmann*, 842 So. 2d 649, 651 (Ala. 2002) (citations and quotations omitted). A store or business like Target is "under a duty to exercise reasonable care to provide and maintain a reasonably safe premises" for its invitees, its customers.[4] *Maddox v. K–Mart Corp.*, 565 So. 2d 14, 16 (Ala. 1990); *see also Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1054 (Ala.2003) ("The duty owed to an invitee by [a business] is the exercise of ordinary and reasonable care to keep the premises in a reasonably safe condition."). Moreover, if the premise is in a dangerous condition, and the business knew or should have known of the condition, the business owner has a duty "to give sufficient warning so that an invitee might avoid danger by the use of ordinary care." *Banks v. Bayou Bend II, Ltd.*, 552 So. 2d 1070, 1071 (Ala. 1989). But a store owner is not an insurer of a customer's safety and is liable only if it negligently fails to keep the premise in a reasonably safe condition. *Dolgencorp, Inc. v. Hall*, 890 So. 2d 98, 101 (Ala. 2003). As such, mere proof of an accident or

---

[4] Target does not dispute that Plaintiff was an invitee when she fell.

6

injury is not enough to establish negligence. *See Lowe's Home Ctrs., Inc. v. Laxson*, 655 So. 2d 943, 946 (Ala. 1994) ("No presumption of negligence arises from the mere fact of an injury to an invitee. . . .").

To establish liability in a slip-and-fall case, a plaintiff must first prove that the defendant business had notice of the substance that caused the accident. *See Maddox*, 565 So. 2d at 16. This can be done in one of three ways: (1) by showing that the business had actual notice that the substance was on the floor; (2) by showing that the substance had been on the floor so long that the store had constructive notice of it; or (3) by showing that the store was otherwise delinquent in failing to discover and to remove the substance. *Id.*; *Cox v. W. Supermarkets, Inc.*, 557 So. 2d 831, 832 (Ala. 1989); *Richardson v. Kroger Co.*, 521 So. 2d 934, 935-36 (Ala. 1988*); see also Williams v. Wal–Mart Stores, Inc.*, 584 F. Supp. 2d 1316, 1319 (M.D. Ala. 2008). A store's delinquency can be shown where the store or one of its employees created the hazard, *see Dunklin v. Winn–Dixie of Montgomery, Inc.*, 595 So. 2d 463, 464 (Ala. 1992); *Nelson v. Delchamps, Inc.*, 699 So. 2d 1259, 1261 (Ala.Civ.App.1997), or where there is evidence that a business's inspection procedures are inadequate or were performed inadequately on the day of a plaintiff's fall. *See Hale v. Kroger, Ltd. P'ship I*, 28 So. 3d 772, 783 (Ala. Civ. App. 2009).

Defendant argues that summary judgment is appropriate because Plaintiff cannot produce any evidence that it had actual or constructive notice of a dangerous condition, or that it was delinquent by either creating a hazard that proximately caused Plaintiff's fall or by employing inadequate inspection procedures. (Doc. 27 at 7-12). In the absence of such evidence, Defendant contends that Plaintiff cannot establish that it owed, and subsequently breached, any duty to warn its customers of the substance.

**A. Actual Notice**

There is no evidence before the court that Target had actual notice of the substance on the floor before Plaintiff fell. There is no testimony from any witness to establish that Target had knowledge of the presence of the liquid on the floor. Instead, Plaintiff testified that she did not know if any Target employee had any knowledge of the spill or how long the substance had been on the floor. (Dalton Dep. at 27-28).

The court is not persuaded by Plaintiff's argument that because Target employees are required to actively look for spills throughout their shifts and typically check their assigned areas every five minutes, an employee must have seen the spill and ignored it. (Doc. 32 at 5-6). This argument requires too big of a jump to constitute evidence from which a reasonable juror could find actual notice. The court, therefore, moves on to the issue of constructive notice.

### B. Constructive Notice

Under Alabama law, "[a] storekeeper is charged with knowledge of a hazard if the evidence shows that the hazard has existed on the premises for such a length of time that a reasonably prudent storekeeper would have discovered and removed it." *Hale*, 28 So. 3d at 779 (citing *S.H. Kress & Co. v. Thompson*, 103 So. 2d 171, 174 (Ala. 1957)). "Direct evidence of the length of time the offending substance has remained on the floor is not required." *Id*. (citing *Cash, Inc.*, 418 So. 2d at 875). Rather, "a jury may infer the length of time from evidence that the substance is 'dirty, crumpled, or mashed, or has some other characteristic which makes it *reasonable* to infer that the substance has been on the floor long enough to raise a duty on the defendant to discover and remove it.'" *Williams*, 584 F. Supp. 2d at 1319 (quoting *Cash*, 418 So. 2d at 876) (emphasis added).

As evidence of constructive notice, Plaintiff points to her testimony that (1) the puddle of the unknown substance had a "clear hard ring around it" and (2) the droplets from the puddle toward Starbucks "were dirty" and "had been tracked through." (Dalton Dep. at 22-24). Plaintiff argues that both these pieces of evidence combine to create a jury question with regard to the length of time the spill was on the floor, and, thereby, create a duty for Target to discover the spill and clean it up. (Doc. 7-11). Defendant argues, however, that this evidence is not sufficient under Alabama law to establish constructive notice. (Doc. 33 at 2-7).

Specifically, Defendant contends that because Plaintiff does not know what the substance actually was, "her testimony regarding the substance being hardened or clear around the edges does not present substantial evidence of the length of time the substance had been on the floor." (*Id*. at 3).

The parties highlight competing Alabama cases in support of their positions. None of the cases, however, are directly on point. The case with the facts closest to the ones presented here appears to be *Ex parte Wal-Mart Stores, Inc*., 806 So. 2d 1247 (Ala. 2001). In *Ex parte Wal-Mart*, the Alabama Supreme Court found that the plaintiff's testimony that a coconut-based shampoo on the floor was "sticky and . . . half dry," appeared "like it had been down there for some time," and looked "clear on the floor" did not constitute substantial evidence of constructive notice sufficient to overcome judgment as a matter of law. *Id*. at 1252. In coming to this conclusion, the Court noted that there was no evidence regarding whether coconut-based shampoo becomes sticky over time if spilled on a floor, and if so, how much time is required for the shampoo to become sticky, and no evidence that coconut–based shampoo becomes clear with age, and if so, at what age. *Id*. Additionally, the Court highlighted the fact that the spill occurred in the cosmetic isle, as opposed to "a generally staffed area of the store," such as a customer service desk near the front of a store. *Id*. Finally, the Court addressed the plaintiff's contention that there were "[pallet-jack tracks] or other wheel marks in

and around and through the substance" which invited the inference that "Wal-Mart employees had been working in the aisle after the spill but before the accident." *Ex Parte Wal-Mart*, 806 So. 2d at 1252. The evidence, however, was actually that the tracks were on the floor, underneath the spill. *Id*. at 1253. There was no evidence that the spill had been tracked through. *Id*. Considering the above evidence, the Alabama Supreme Court concluded that the evidence was not sufficient to establish constructive notice as a matter of law. *Id*. at 1252-53.

Looking at the evidence here, the court similarly finds it insufficient to create a jury question on the issue of constructive notice. First, there is no evidence as to the identity of the substance. This fact alone creates a major hurdle for Plaintiff. Without knowing the precise identity of the substance, it is impossible for the court or a jury to do anything other than to speculate regarding the rest of Plaintiff's testimony concerning the substance. It is impossible to reasonably infer anything about the qualities of an unknown substance and how long it takes a six-inch wide puddle of that unknown substance to appear dry with a clear ring around it. Moreover, even if the court assumes that the substance was milk or cream, there is no evidence regarding the time it takes for a six-inch wide puddle of milk or cream to form a clear, hard ring around it. *See Ex Parte Wal-Mart*, 806 So. 2d at 1252.

Second, the spill occurred at the front of the store, near checkout lane twelve, which was one of the closest to the entrance escalator. Plaintiff argues that either the cashier or the guest services employees assigned to the area should have seen the spill if they had been reasonably prudent. Plaintiff testified that the cashier in checkout lane twelve saw her fall, but there is no evidence establishing the distance of the cashier and/or checkout lane from the spill or any evidence indicating the cashier's ability to observe the spill from her location. Additionally, although it is Target's policy that employees constantly walk the sales floors and guest service employees were assigned to the area where Plaintiff fell (*see* Wallace Dep. at 16, 29-30), there is no specific evidence about who was assigned to the area, when they last walked through the area, or where they were at the time of the incident in question. This argument does not aid Plaintiff in establishing constructive knowledge – it requires too many inferences. Plaintiff wants the court to assume that the employees were off doing other things and did not observe a spill that had been there for some length of time, but the court could just as easily assume that the spill occurred in the exact moment that a guest services employee left the area to help another customer and Plaintiff walked off the escalator and fell.

The fact that Plaintiff testified that the drops from the puddle headed toward the Starbucks were dirty and looked like they had been tracked through is not as

significant as Plaintiff makes it out to be. In *Ex Parte Wal-Mart*, the Court indicated that the result in that case may have been different if there was evidence that there were wheel marks in and throughout the spill, thus indicating that employees had been working in the aisle after the spill but before the accident. 806 So. 2d at 1252. Here, the mere fact that the droplets had been tracked through and were dirty only indicates that someone walked through the substance at some point. It does not raise an inference that the person or persons who walked through the substance was a Target employee. This is especially true in light of the fact that the spill was at the front of the store, where there is more customer traffic. That being said, there is no evidence as to how many customers came in and out of the store on that particular day near the time of Plaintiff's fall or how many people walked in the area around the time of the accident. *See Wal-Mart Stores, Inc. v. Gozalez*, 968 S.W.2d 934, 937 (Tex. 1998) (applying similar Texas law regarding constructive knowledge and finding that "[d]irt in macaroni salad lying on a *heavily-traveled aisle* is no evidence of the length of time the macaroni had been on the floor. That evidence can no more support the inference that it accumulated dirt over a long period than it can support the opposite inference that the macaroni had just been dropped on the floor and was quickly contaminated by customers and carts traversing the aisle."). Additionally, the track marks could have been made by Plaintiff herself.

Plaintiff makes much of the argument, and clearly invites the court to infer from the evidence, that the liquid had been on the floor for more than five minutes. (*See* Doc. 32 at 5-6, 8). Plaintiff insists that because Target's corporate representative testified that he expected employees to be looking at their environments "more than every five minutes probably," (Wallace Dep. at 23), and would immediately clean any spill if seen, a reasonable jury could infer that if Target employees were following their training, no spill would be left unattended for more than five minutes. (Doc. 32 at 5). The court is not persuaded by Plaintiff's argument because it assumes facts that are simply not in the record. Namely, it assumes the length of time the spill had been on the floor where there is no evidence of that time other than Target's policy that employees scan their areas every five minutes. Additionally, Target's policies regarding an employee's responsibilities to routinely scan their work environments and immediately clean up spills when seen does not somehow create a standard higher than that created by Alabama law. There is no magic number of minutes under Alabama law establishing how long a premises owner has to identify and clean up a spill. Instead, cases have found that spills that have been on the floor from five to ten minutes insufficient to establish constructive knowledge. *See Hale*, 28 So. 3d at 781 (four to five minutes an insufficient time to support a jury finding that defendant had constructive notice); *Hose v. Winn-Dixie Montgomery, Inc.,* 658 So.

2d 403, 405 (Ala. 1995) (five to ten minutes an insufficient length of time to impute constructive notice of a substance's presence).

The court also rejects Plaintiff's arguments regarding Target's staffing and failure to follow Target policies. (Doc. 32 at 11-20). With regard to staffing, Plaintiff argues that Target was not adequately staffed to timely remove spills and maintain its premises in a reasonably safe condition, as required by law. (*Id*. at 11-17). Instead, Plaintiff contends that the responsibilities of each Target employee are too great and necessarily result in spills being left on the floor for prolonged periods of time. (*Id*.).

Plaintiff's staffing argument is unpersuasive for two basic reasons. First, there is simply no evidence to support Plaintiff's theory that the reason for her fall was because employees were too busy with other aspects of their job to properly inspect their respective areas for hazards. Instead, Plaintiff asks the court to assume that her fall occurred simply because Target employees are required to do things other than monitor the floor for spills. The court refuses to make such an assumption as it requires one leap too many. While the court may be inclined to make the first jump - that Target employees have many other tasks assigned to them that take them away from monitoring their areas - the second jump - that because of these tasks, employees either were too busy or distracted to notice and clean up the spill - goes too far and is too big of a hurdle from which a reasonable

juror could find constructive notice. There is simply no evidence in the record to support this second assumption. As stated above, the mere fact that Plaintiff was injured does not equate with a presumption of negligence on the part of the premises owner. *See Hale*, 28 So. 3d at 778. Second, Plaintiff's argument imposes a far higher duty on a premises owner than the law requires. The law imposes on premises owners "a duty . . . to exercise reasonable care in providing and maintaining a reasonably safe premises for the use of their customers." *Vargo v. Warehouse Groceries Management, Inc*., 529 So. 2d 986, 986 (Ala. 1988). Premises owners must keep the premises in a "reasonably safe condition" and to warn customers of any hazards "that are known to the landowner but are unknown or hidden to the invitee." *Hale*, 28 So. 3d at 778 (citations omitted). The standard is reasonableness, not strict liability.

With regard to Target's policies, Plaintiff argues that Target employees violated company policy in the way they responded to and documented the incident. (Doc. 32 at 18-20). As such, Plaintiff argues that the "policy violations surrounding the incident creat[e] questions of material fact regarding Target's efforts to maintain safety on its premises." (*Id*. at 20). However, Plaintiff's entire argument centers on pure speculation about what happened, how the liquid was spilled, how long the spill was on the floor before Plaintiff fell, and whether or not an employee saw the spill or even should have seen the spill before she fell. It also

requires the court to infer that employees were shirking their responsibilities and there is no evidence to support that inference. In fact, there is no evidence to back up any of these suppositions and the court refuses to make inferences not reasonably supported by the facts before it.

Based on the above, the court concludes that the evidence presented shows that the unknown substance had been on the floor for some length of time. It would be pure speculation, however, to infer from the evidence that the substance had been there long enough to impute constructive knowledge of the hazard on Target. There are too many assumptions that need to be made and Alabama law does not permit such speculation. To charge Target with constructive notice on the facts presented here would make a premise owner a de facto insurer of invitees' safety and that is clearly not the state of the law in Alabama. *See Ex parte Harold L. Martin Distrib. Co.,* 769 So. 2d 313, 314 (Ala. 2000) (internal quotations omitted); *see also Hale*, 28 So. 3d at 781-82 ("Given the absence of any evidence indicating that the size and location of the spill should have alerted [defendant] employees in the area to its presence in the relatively short period between the spill and [plaintiff's] fall . . . [, plaintiff] did not present substantial evidence . . . indicating that [defendant] had constructive knowledge of the hazard.").

## C. "Otherwise Delinquent"

Alabama law recognizes that, in the context of a spill, a plaintiff may establish a defendant's superior knowledge of the hazard, thereby triggering the defendant's duty to remedy the hazard or provide adequate warning, by showing that the defendant was "otherwise delinquent" in failing to discover and remove the spill. *See Williams.*, 584 F. Supp. 2d at 1320. As explained by Senior United States District Judge Myron H. Thompson in the Middle District of Alabama,

> Plaintiffs have been able to show delinquence and survive summary judgment, without length-of-time evidence, in two general categories: cases in which the defendant was responsible for the hazardous substance on the floor; and cases in which the fact that it was raining outside suggests that the defendant should have been aware of the potential for water to collect on the floor.

*Id*. The second category of cases is not relevant to the facts here, so the court turns to the first line of cases.

The first category includes cases like *Cox v. Western Supermarkets, Inc*., where water on the floor of a grocery store appeared to have dripped from ice used by the store to keep vegetables fresh. 557 So. 2d at 831. The store was aware that water occasionally fell on the floor in this section and, therefore, placed rubber mats in the area and assigned people to watch it. *Id*. As such, the Alabama Supreme Court found that the supermarket was on notice that water was a problem

in the produce section and may have been negligent in its response.[5] *Id.* at 823. Similarly, in *Dunklin v. Winn-Dixie of Montgomery*, *Inc.*, the Alabama Supreme Court found that, where the plaintiff provided evidence that water on the floor was spilled by an employee washing produce, a jury could find that the supermarket was negligent in failing to discover and clean the spill. 595 So. 2d at 464.

Here, Plaintiff argues that "Target was on notice that Starbucks spills were a problem in that area and was aware of the potential that milk and coffee beverages, especially in children's cups, tend to often be spilled by customers" and that "customer volume adds to this problem." (Doc. 32 at 21). As such, Plaintiff concludes that Target's knowledge of this issue, without any additional precautions, is sufficient to suggest that Target was negligent in response to the problem. (*Id.* at 21-22). The court disagrees. The evidence does not necessarily establish that the spill was from a Starbucks product. Plaintiff testified that the droplets were from the puddle to Starbucks. (Dalton Dep. at 23). She testified however, that she did not know whether the person who spilled the liquid was walking toward the Starbucks and the droplets formed after the initial spill or if it happened the other way around. (*Id.*). The spill could just have easily been from a liquid brought to the Target by a customer or a child. We simply do not know.

---

[5] The court notes that *Cox* was decided under the old "scintilla rule." The court uses this case as an example of Alabama substantive law governing proof of delinquency, as opposed to procedural law governing the amount of evidence required to overcome a motion for summary judgment.

19

Additionally, even if the court were to infer that the spill came from a product purchased at the Starbucks, the mere fact that Target has a section of its store where beverages are sold does not equate with the conclusion that Target has created a hazard sufficient to subject it to liability upon any spill that is not immediately cleaned by a Target employee. Plaintiff has not pointed the court to any Alabama law supporting such a finding and the court has found none. Such a finding would, for all practicable purposes, convert premises liability into absolute liability wherever there was a spill if taken to its logical conclusion. The court refuses to do so.[6]

## IV. CONCLUSION

For the foregoing reasons, summary judgment is due to be granted in favor of Target on Plaintiff's negligence claim. A separate order will be entered.

**DATED** this 6th day of August, 2019.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge

---

[6] The court also rejects Plaintiff's arguments regarding the lack of video evidence, the affidavit testimony of Adrianna Warren, and the statement from the cashier. None of these arguments affect the court's determination that no genuine issue of material fact exists in this case.